IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

LANEITRA FORTE,

    Plaintiff,

                              CASE NO. 3:14-cv-1-RS-CJK

WEST FLORIDA MEDICAL
CENTER CLINIC P.A.,

    Defendant.
_____/

## ORDER

Before me are Plaintiff Fourte's Motion for Equitable Relief (Doc. 62), Defendant's Opposition to Plaintiff's Motion for Equitable Relief and Request for Hearing (Doc. 66), Defendant's Findings of Fact and Conclusions of Law (Doc. 89), Plaintiff's Memorandum in Support of Order Granting Equitable Relief (Doc. 90), Plaintiff's Proposed Order (Doc. 90-1), and Defendant's Rebuttal to Plaintiff's Findings of Fact and Conclusions of Law (Doc. 93).

Plaintiff Laneitra Fourte sued her former employer, West Florida Medical Center Clinic, for terminating her in retaliation for exercising her rights under the Family and Medical Leave Act (FMLA). At trial, the jury rendered a verdict in favor of Fourte. Although damages were precluded as a matter of law due to Fourte's failure to mitigate, Fourte filed a post-trial motion seeking equitable relief,

1

including front pay and reinstatement, based on the jury's verdict. West Florida opposed the motion, arguing that Fourte was not entitled to equitable relief based on the after-acquired evidence doctrine. West Florida claims that it would have fired Fourte based on information it learned about her during discovery and after trial had it known that information while she was employed there.

An evidentiary hearing was held March 19, 2015, to determine the facts surrounding the matter. Based on the evidence produced at the hearing, I make the following findings of fact and conclusions of law. I conclude that West Florida would have fired Fourte based on the information that it obtained about her during and after discovery, and that she is precluded from receiving reinstatement or front pay, as well an injunction prohibiting future discrimination. She is entitled only to an order requiring West Florida management to undergo additional training. Therefore, Fourte's motion for equitable relief is granted in part and denied in part.

## I.   STANDARD OF REVIEW

Once discrimination has been proven, a presumption of entitlement to appropriate remedies such as injunctive relief, as well as hiring and back pay arises. *Lewis v. Smith*, 731 F.2d 1535, 1538 (11th Cir. 1984). The burden then shifts to the employer to rebut the presumption by showing that the discriminatee would not have been hired absent the discrimination. *Id.* The defendant must prove this burden by a preponderance of the evidence. *Id.* at 1535; *Munoz v. Oceanside*

*Resorts, Inc.*, 223 F.3d 1340, 1350 (11th Cir. 2000) ("[Defendant] does not dispute that it bore the burden of proving by a preponderance of the evidence that it would not have employed [Plaintiff] at the time of trial.").

Fourte's argument that a "clear and convincing" evidence standard applies is incorrect. The case that she cites as authority for that proposition, *McCormick v. Attala City Bd. of Ed.,* 541 F.2d 1094 (5th Cir.1976), was explicitly overruled on that point. *See Lewis*, 731 F.2d at 1539 (noting that *McCormick*'s clear and convincing evidence standard had been replaced by a preponderance of the evidence standard by 1977). It is unusual that Fourte did not notice this problem, as two of the cases that she cites for additional authority, *Lewis* and *Joshi v. Florida State Univ. Health Ctr.*, 763 F.2d 1227, 1236 (11th Cir. 1985), specifically state that a preponderance of the evidence standard applies.

## II.    BACKGROUND AND FACTUAL FINDINGS

### a.    *Background*

Plaintiff Laneitra Fourte sued her employer, Defendant West Florida Medical Center Clinic, for FMLA retaliation. West Florida fired her less than an hour after she returned to work from an absence of FMLA leave. (*See* Doc. 35). Fourte claimed it was in retaliation for taking leave the leave. Taking the leave caused her co-workers to be upset for having to cover her shifts while they perceived Fourte to be enjoying her free time during her recovery period. (*Id.*).

West Florida denied her allegations and instead claimed that it fired her for insubordinate behavior during the meeting it had with her to address her co-workers' concerns. (*Id.*).

In the Order for the motion for summary judgment (Doc. 35) and ensuing pre-trial proceedings, I determined that Fourte had failed to mitigate her damages up to the date of trial, and thus was not entitled to any damages at law. Because Fourte still could have been entitled to equitable relief, a jury trial was held on the sole issue of whether West Florida had retaliated against her for taking FMLA leave. On October 21, 2014, the jury returned a verdict in Fourte's favor. (Doc. 60).

Following the jury's verdict, Fourte filed a motion seeking equitable relief (Doc. 62), including reinstatement, front pay, an anti-discrimination injunction, and mandatory anti-discrimination training for West Florida's managers. In opposing the motion, West Florida pointed to evidence in the record that showed that Fourte lied on her initial application for employment, and claimed it would have immediately fired her had it known this information. Specifically, it invoked the after-acquired evidence doctrine to argue that reinstatement and front pay are inappropriate, and requested an evidentiary hearing on the matter. That hearing was held on March 19, 2015.

### *b.     Factual Findings*

At the hearing, both parties presented evidence concerning Fourte's conduct both prior to filling out her employment application with West Florida and after her termination from West Florida, as well as evidence of West Florida's policies and practices and whether they would have employed Fourte had it known about her conduct.

### *1.  Fourte's Conduct*

The testimony presented at the hearing revealed two noteworthy findings about Fourte's conduct. First, Fourte did not disclose on her job application with West Florida that she was asked to resign in lieu of being fired by her previous employer. Second, Fourte was fired by the employer she worked for immediately after she was terminated from West Florida.

### *A.  Omission from her employment application*

Fourte's testimony at the hearing indisputably revealed that, prior to working for West Florida, she resigned from the Santa Rosa County Sherriff's Department in lieu of being fired. (Hearing Transcript, Doc. 90-2 at 54-56). This same information was corroborated by her answers to questions in her deposition. (Doc. 26-3 at 17).

Further, I find that the testimony at the hearing revealed that Fourte failed to disclose this information on her employment application with West Florida. West

Florida's employment application asks employees whether they have been discharged from a job or forced to resign. (Doc. 90-2 at 53, 57, Hearing Ex. 1). If the employee states "yes", they have been discharged or forced to resign, the application provides employees an opportunity to explain. (*Id.*). However, Fourte indicated on her employment application that she had never been discharged from a job or forced to resign. (Doc. 90-2 at 53, Ex. 1.).

Fourte signed the employment application and agreed to the following statement: "I hereby state that the information given by me in this application is true in all respects. I understand that if I am employed and the information is found to be false in any respect, I will be subject to dismissal without notice at any time." (emphasis added). (Id. at 54, 57, Ex. 1.). Fourte also testified that she knew that if anything was found to be false in the employment application, she would be fired. (Id. at 59.)

To the extent that Fourte tried to explain or justify her omission by arguing that she misunderstood the question, or because she believed that she wasn't forced to resign, (Doc. 90-2 at 54-56; 63-64), I do not find her explanation credible. Fourte's testimony and the testimony at her deposition revealed that she was fully aware that she was asked to resign in lieu of being fired by the Sheriff's Office because she was caught breaking office policies. She understood that her resignation was in lieu of firing, and the question on West Florida's employment

application was sufficiently clear that she could not possibly have misinterpreted it as it applied to her employment with the Sheriff. Furthermore, even in the unlikely event that she had misunderstood the question, the information was still objectively "false" and in violation of the covenants contained in the employment application and thus sufficient to subject her to dismissal.

### B. Subsequent termination

After Plaintiff's termination from Defendant she began working for a company called Fortis.

Fourte testified that she was warned repeatedly about her performance while working at Fortis and was eventually terminated from Fortis for willful violations of established policies. (Doc. 90-2 at 63). She further admitted that if she filled out an employment application at West Florida today, she would indicate that she was terminated from Fortis and explain in the application that Fortis terminated her employment for the reasons it identified (willful violation of established policies). (*Id.* at 63-68.). She would also explain under the question "have you ever been terminated from a job?" that she asked questions to her superiors regarding why she was being told to work off the clock and she believed she was terminated for questioning Fortis's pay practices. (*Id.* at 63-68.).

I therefore find that Fourte was terminated by Fortis after she began working there. Fourte gave conflicting testimony about the reason for being fired, and

7

would have had to explain the conflicting testimony to West Florida had she applied there again after being fired from Fortis.

*2. West Florida's Employment Policies and Practices*

The testimony presented at the hearing also revealed that, based on West Florida's policies and past practices in hiring employees, West Florida would have fired Fourte once it found out that she incorrectly answered the resignation question on her employment application.

West Florida's employment application alerts employees that if information on the employment application is found to be false in any respect, the employee "will be subject to dismissal without notice at any time." (Doc. 90-2 at 18-19, Ex. 1.).

Defendant's employment handbook also lists falsifying an employment application as an example of misconduct that may result in termination. Each employee receives a copy of the employment handbook. This policy was in effect during Plaintiff's employment with Defendant. (Doc. 90-2 at 20-22, Hearing Ex. 2.).

Michele Stinson, West Florida's person in charge of human resources, testified that West Florida has a zero tolerance policy for falsifying information on an employment application. (Doc. 90-2 at 21.). She further testified that she is

unaware of anytime that West Florida knew that an employee falsified her employment application and was allowed to continue working there. (*Id.*).

West Florida admittedly does not code the reason for termination of employees. The only way for it to review the reasons for employee termination is by memory and a review of each file. (*Id.* at 22). However, as a result of this case, Stinson reviewed a list of discharged employees going back several years and reviewed the personnel files to determine the reason for the discharge. (*Id.*)

At the hearing, Stinson provided evidence that other employees had been terminated for falsifying employment applications. (*Id.* at 23-33). For example, she testified that West Florida terminated Samantha Stanton for not disclosing information on her employment application. Stanton had been told by a previous employer that she must resign in lieu of termination. Like Fourte, Stanton did not disclose this fact on her application. West Florida later learned that Stanton was untruthful and terminated her employment. (*Id.* at 23-24, Ex. 3).

Stanton was terminated in August 2013, which was after Plaintiff's termination, but before Plaintiff challenged her discharge. (Doc. 90-2 at 25). At the time that West Florida hired Stanton, it was unaware that she had falsified her employment application. (*Id.*).

West Florida also provided three examples where it withdrew an offer to an applicant when it learned that the applicant falsified an employment application.

(*Id.* at 29, 31-32). It withdrew an initial offer of employment when it learned that Jeaneane Bowden did not accurately state the job positions and dates of employment on an employment application. It also withdrew an offer of another employee when it learned that the employee did not provide accurate information regarding a criminal conviction. (Id. at 29. 31-32, Ex. 4).

During Fourte's deposition in July 2014, West Florida first learned that she had not disclosed her resignation in lieu of discharge on her employment application. (Id. at 26). I find, based on the credible testimony of Michele Stinson, that had West Florida known that Fourte lied on her application it would not have hired her. Furthermore, West Florida would have terminated Fourte had it learned that she lied on her application while she was still employed there. (*Id.* at 33-35, 51-52). Stinson testified that she was not aware of any instance where an employee lied on an employment application and was allowed to continue to work at Defendant. (*Id.* at 51).

Likewise, I find that West Florida would not hire Fourte today if her employment application demonstrated that Plaintiff had resigned in lieu of termination and had been terminated for performance reasons from her last two jobs in close proximity to working for West Florida. (*Id.* at 32-33).

Fourte's arguments that West Florida's testimony was self-serving and therefore not credible are unconvincing. West Florida had guidelines and policies

10

in place stating that employees who lied on their job applications could be subject to termination. West Florida's representative, Michele Stinson, testified credibly and confidently about a number of instances in which it terminated or rescinded offers from employees for being untruthful or listing incorrect information on their job application.

Moreover, it is entirely reasonable for an employer like West Florida to fire an employee that they found to have been deceitful on her job application. This is especially true when the deceit—whether intentional or not—served to cover up a recent termination from another employer based on performance-related issues. Other courts have consistently found that dishonesty or inaccuracies in employment applications would have caused employers to fire their employees. *See, e.g., Wallace v. Dunn Const. Co.*, 62 F.3d 374, 377 (11th Cir. 1995) (finding employee barred from relief after she lied on job application); *Cook v. Shaw Indus.*, 953 F. Supp. 379, 385 (M.D. Ala. 1996) ("[E]ven if the omission was unintentional, the Plaintiff would have been terminated pursuant to the Defendant's seemingly ironclad policy of immediate termination for any falsification on an employment application."); *Yeary v. Florida Dep't of Corr.*, No. 95-0583-CIV-J-21-C, 1997 WL 284648, at *6 (M.D. Fla. May 13, 1997) (finding that plaintiff would have terminated after defendant learned of omissions on her job application); *Neal v. Manpower Int'l, Inc.*, No. 3:00-CV-277/LAC, 2001 WL

1923127, at *15 (N.D. Fla. Sept. 17, 2001) (finding that plaintiff would have been terminated had the employer known that she had falsified her employment application).

I thus find, based on the evidence presented at the hearing, the credibility I observed in the witnesses, and common sense in employment practices, that West Florida would have fired Fourte had she still been employed with them when they found out about her inaccurate employment application, and that West Florida would not hire her were she to apply today.

### III.   ANALYSIS

*a.   Front Pay and Reinstatement Are Barred under the After-Acquired Evidence Doctrine*

*1.   The After-Acquired Evidence Doctrine*

Under the after-acquired evidence doctrine, where an employer discovers post-termination that employee engaged in wrongdoing during their employment, and establishes that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone had the employer known about the offense at the time of discharge, the employee's relief may be limited to the date of the discovery of the new information. *Holland v. Gee*, 677 F.3d 1047, 1064-65 (11th Cir. 2012). To preclude front pay, an employer must show that the employee would not have been retained in any capacity at the time of trial. *Id.* at

1066 fn. 9. This rule explicitly applies to cases "in which the after-acquired evidence concerns the employee's misrepresentations in a job application or resume." *Wallace v. Dunn Const. Co.*, 62 F.3d 374, 379 (11th Cir. 1995). The burden is on the employer to prove that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone. *Holland*, 677 F.3d at 1065.

Here, I found that Fourte engaged in wrongdoing by failing to disclose on her employment application that she had been asked to resign in lieu of being fired by her previous employer. I also found that this wrongdoing was of such severity, based on West Florida's employment practices and policies, that West Florida would have terminated her on those grounds alone had it known about it prior to the time it discharged Fourte.

Fourte's relief in this case is therefore limited to the date of discovery of this information—July 14, 2014. This ruling thus precludes Fourte from receiving front pay and reinstatement.

### 2. *West Florida's Alternative Arguments*

West Florida also makes two additional arguments that Fourte should not receive front pay or reinstatement. As explained, I need not reach either of these arguments.

First, West Florida argues that Fourte's subsequent termination from Fortis should be viewed as additional after-acquired evidence that Fourte would have been fired anyway. Fourte did not file a rebuttal to this argument.

West Florida, in so arguing, relies entirely on *Crapp v. City of Miami Beach*, 242 F.3d 1017, 1021 (11th Cir. 2001), in which a police officer sued his employer for race discrimination after he was fired. Although the officer prevailed at trial, the court vacated his awards of reinstatement and back pay after the Florida Department of Law Enforcement concluded an investigation against him and suspended him from being a police officer. *Id.* The court concluded that, based on his suspension, he could have been legally fired as of the date he became suspended. *Id.*

West Florida's argument pushes *Crapp*'s holding to its outer limits. Unlike Officer Crapp, who was investigated by the FDLE independently of his lawsuit and would have been decertified regardless of whether he was terminated, Fourte would not have had to become employed by Fortis but for her termination by West Florida. Yet the jury found that Fourte's termination by West Florida was illegal and in violation of FMLA.

West Florida shows a degree of *chutzpah* in arguing that Fourte's termination from the job that she found *after it illegally fired her* should bar her from re-employment. However, as I have already ruled in West Florida's favor

under a more traditional application of the after-acquired evidence doctrine, I need not address this new theory of relief.

Second, West Florida's argues that Fourte failed to mitigate her damages subsequent to trial because she failed to maintain employment and failed to apply to additional jobs. Again, I need not address this argument.

The hearing did not appear to reveal exactly how long Fourte worked with Fortis. The hearing was also inconclusive as to exactly why Fourte was terminated from Fortis, as she testified that she was only fired as a result of her questioning seemingly illegal labor practices by Fortis. (Doc. 90-2 at 66). Fourte testified that she had applied to additional jobs (Doc. 90-2 at 68), although apparently she failed to disclose those during discovery. West Florida did not include the factual bases for this argument in its proposed findings of fact, and did not provide any citations to the record or the hearing transcript in support of its argument. I thus need not address this argument, as I have already ruled in West Florida's favor under the after-acquired evidence doctrine.

### b.     *Other Injunctive Relief*

Because Fourte is precluded from front pay and reinstatement, she is likewise not entitled to an injunction preventing West Florida from continuing to discriminate or retaliate against her. *See Wallace v. Dunn Const. Co.*, 62 F.3d 374, 380 (11th Cir. 1995) ("Injunctive relief also will not be appropriate, as [plaintiff]

will no longer be employed at [defendant]."); *Casanova v. Pre Solutions, Inc.*, 228 F. App'x 837, 842 n. 13 (11th Cir. 2007) ("Because reinstatement is inappropriate, Plaintiff is entitled to no other injunctive relief that is dependent on his reinstatement.").

However, West Florida previously raised no objection to conducting additional managerial training on the legal requirements of various employment laws. (*See* Doc. 66 at 6). West Florida likewise did not address or object to conducting training in either of its post-hearing filings (Docs. 89, 93). Such consent relief thus appears appropriate in this case, especially given that the jury found that West Florida's management did retaliate against Fourte in violation of the FMLA.

## IV.   **CONCLUSION**

I thus find that West Florida would have fired Fourte for omissions on her job application had it known about those omissions during the time that she was employed there. Under the after-acquired evidence doctrine, Fourte's relief is limited to the date that West Florida learned about her inaccurate job application. Because it learned about those inaccuracies prior to trial, most equitable relief—including front pay, reinstatement, and an anti-discrimination injunction—is inappropriate. West Florida must only complete the FMLA training program to which it previously consented.

Therefore, Plaintiff Fourte's Motion for Equitable Relief (Doc. 62) is **GRANTED IN PART**, **DENIED IN PART**. Plaintiff's request that Defendant undergo anti-discrimination training is granted. The motion is denied in all other respects, including requests for front pay, reinstatement, and an injunction barring future discrimination against Plaintiff.

The parties shall, not later than May 19, 2015, submit a joint proposed order of final judgment in this case outlining an appropriate training program that Defendant must institute and undergo.

**ORDERED** on May 5, 2015.

<u>**/s/ Richard Smoak**</u>
**RICHARD SMOAK**
**UNITED STATES DISTRICT JUDGE**